IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JASMINE-JADE ENTERPRISES, LLC, )<br>1056 HOME AVENUE )<br>AKRON, OHIO  44310, )<br>)<br>   and )<br>) <br>ELLORA'S CAVE PUBLISHING, INC. )<br>1056 HOME AVENUE )<br>AKRON, OHIO  44310, )<br>) <br>          Plaintiffs, )<br>) <br>     -vs- )<br>) <br>BORDERS GROUP, INC. )<br>c/o THE CORPORATION COMPANY )<br>STATUTORY AGENT )<br>30600 TELEGRAPH ROAD )<br>BINGHAM FARMS, MICHIGAN 48024, )<br>) <br>     and at )<br>) <br>BORDERS GROUP, INC. )<br>100 PHOENIX DRIVE )<br>ANN ARBOR, MICHIGAN 48108, )<br>) <br>     and )<br>) <br>BAKER & TAYLOR, INC. )<br>c/o CT CORPORATION SYSTEM, )<br>STATUTORY AGENT )<br>150 FAYETTEVILLE STREET )<br>P.O. BOX 1011 )<br>RALEIGH, NC 27601, )<br>) <br>     and at )<br>) | CASE NO. 5:09-CV-00320<br><br>JUDGE LIOI<br>MAGISTRATE JUDGE LIMBERT<br><br><br><br><br><br><br><br><br><br><u>*PLAINTIFF'S FIRST AMENDED*</u><br><u>*COMPLAINT*</u><br><br><br><br>(JURY DEMAND ENDORSED<br>HEREON) |

| | |
|---|---|
| **BAKER & TAYLOR, INC.** | ) |
| **2550 WEST TYVOLA ROAD** | ) |
| **SUITE 300** | ) |
| **CHARLOTTE, NC 28216,** | ) |
| | ) |
| **Defendants.** | ) |

Plaintiffs, Jasmine-Jade Enterprises, LLC ("Jasmine Jade") and Ellora's Cave Publishing, Inc. ("Ellora's Cave") (collectively "Plaintiffs"), by and through their attorneys, for their First Amended Complaint allege the following against Defendants, Borders Group, Inc. ("Borders"), and Baker & Taylor, Inc. ("Baker & Taylor") (collectively "Defendants").

## JURISDICTION AND VENUE

1. This matter is a suit of a wholly civil nature of which this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

2. Venue properly lies in this Court under 28 U.S.C. § 1391.

## PARTIES

3. Ellora's Cave Publishing, Inc. is an Ohio corporation organized in 2002 with its principal place of business in Akron, Ohio, and began its business at that time.

4. Jasmine-Jade Enterprises, LLC is an Ohio limited liability company organized in 2005 with its principal place of business in Akron, Ohio, and began its business at that time.

5. Borders Group, Inc. is a Michigan corporation with its principal place of business in Ann Arbor, Michigan.

6. Baker & Taylor, Inc. is a North Carolina corporation with its principal place of business in Raleigh, North Carolina.

7. Jasmine Jade is the distributor for all Ellora's Cave, Cerridwen Press and The Lotus Circle titles and handles the administrative, printing, and distribution functions for Ellora's

Cave, Cerridwen Press, and The Lotus Circle. Ellora's Cave is the publisher for various titles distributed by Jasmine Jade.

8. Borders is one of the largest book retailers operating within the United States with stores located throughout the United States as well as internationally.

9. Baker & Taylor is a very large book and entertainment distributor operating in the United States, as well as internationally.

## FACTUAL HISTORY

10. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 9 above as if completely rewritten herein.

11. At their inception, Plaintiffs sold their publications in print format to both large and small retailers directly as well as to distributors. Ellora's Cave also sold its publications in electronic format.

12. On June 10, 2004, Ellora's Cave entered an agreement whereby Ellora's Cave began selling books to Borders and Borders agreed to purchase the same. Ellora's Cave transferred all distribution and administrative responsibilities to Jasmine Jade in 2005.

13. On August 8, 2005, Jasmine Jade entered an agreement whereby Jasmine Jade began selling books to Borders and Borders agreed to purchase the same.

14. Borders requires book suppliers to complete its Supplier Registration Form in order to sell books to Borders.

15. Borders' policies for suppliers, including payment terms, billing and procedures for returns by Borders of books ordered are contained in its "Supplier Registration Form," "Purchase Terms Agreement," and "Return Procedures." *See* a copy of the documents signed by Ellora's Cave on June 10, 2004, attached hereto as Exhibit "1" and incorporated herein. *See also*

3

a copy of the documents signed by Jasmine Jade on August 8, 2005, attached hereto as Exhibit "2" and incorporated herein.

16. Pursuant to the Supplier Registration Form, the standard payment terms for books supplied by Plaintiffs was 60 days.

17. Under the Supplier Registration Form, Borders could return books that it ordered from Plaintiffs immediately upon receipt and receive a credit against the total outstanding balance rather than to the individual invoice associated with the returns.

18. During the relationship, Borders continually ordered an excessive number of books from Plaintiffs.

19. Borders returned the excess books to Plaintiffs, took a credit for the returns and applied the credit to the outstanding balance owed to Plaintiffs.

20. The effect of Borders' actions resulted in Plaintiffs receiving very little, if any, actual compensation for books supplied to Borders by Plaintiffs.

21. Borders' returns to Plaintiffs numbered in the tens of thousands over the term of the relationship of the parties.

22. These returns amounted to millions of pages of paper which constituted an enormous waste of natural resources and damage to the environment.

23. This practice engaged in by Borders is commonly referred to in the publishing industry as "churning."

24. Churning in the publishing industry by large retailers and distributors has caused severe hardships for numerous small independent publishers to the extent that the very existence of such entities is in jeopardy.

25. Borders was made aware of the issues concerning excessive returns during the period in which Plaintiffs sold books directly to Borders. However, Borders did nothing to reduce returns.

26. Around May 2007, Plaintiffs informed Borders that they would no longer ship books to Borders due to the excessive returns. At that time, Regan McBurney, a merchandising representative for Borders, informed Plaintiffs that Borders would use Baker & Taylor to obtain books from Plaintiffs.

27. Also around that time, Regan McBurney informed Plaintiffs that Borders' Return Center had been contacted and instructed to send out the last returns of any of Plaintiffs' product.

28. Borders, through its authorized representative, Regan McBurney, also informed Plaintiffs at that time that the returns referenced in Paragraph 27 "will be the last returns you receive from us."

29. Around the end of May 2007, Borders began ordering books from Plaintiffs through Baker & Taylor.

30. Plaintiffs had an agreement with Baker & Taylor whereby Plaintiffs would provide books ordered by Baker & Taylor and Baker & Taylor would compensate Plaintiffs for the same.

31. Baker & Taylor's requirements for publishers from which it purchases books are contained in several documents drafted by Baker & Taylor, including the document entitled "Baker & Taylor Books Vendor Requirements" as well as the "Vendor Application" which contains Baker & Taylor's "Required Terms of Sale." *See* Exhibit "3" attached hereto and incorporated herein.

5

32. Borders continued its practice of ordering and returning excessive numbers of books from Plaintiffs through Baker & Taylor.

33. Baker & Taylor was aware or should have been aware of Borders' practice of ordering an excessive number of books.

34. Shortly after Borders' representation to Plaintiffs that they would not receive anymore returns from Borders, Borders began returning books that it ordered from Plaintiffs to Baker & Taylor.

35. Borders received a credit from Baker & Taylor against its outstanding balance with Baker & Taylor for the books referenced in Paragraph 34.

36. Baker & Taylor represented to Plaintiffs that the books referenced in Paragraph 34 were books purchased by Baker & Taylor from Plaintiffs.

37. Baker & Taylor used the books referenced in Paragraph 35 as a credit against the outstanding balance owed to Plaintiffs for books ordered by it from Plaintiff.

38. Around October 2007, Plaintiffs discovered that Baker & Taylor had been returning books to Plaintiffs which Borders had purchased from Plaintiffs rather than Baker & Taylor.

39. Also around October 2007, Plaintiffs addressed the issues of the excessive returns by Baker & Taylor as referenced above with Baker & Taylor.

40. In June 2008, Plaintiffs ceased doing business with Baker & Taylor due to the hardship placed on it by the excessive returns from Baker & Taylor.

## COUNT ONE
### (BREACH OF CONTRACT - BORDERS)

41. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 40 above as if completely rewritten herein.

6

42. Plaintiffs had an agreement with Borders whereby Plaintiffs would supply books to Borders and Borders would compensate Plaintiffs for the same. *See* Exhibits "1" and "2."

43. According to the agreement between Borders and Plaintiffs, although Borders could return books which it ordered, Borders was restricted from returning damaged books.

44. By continually ordering and returning excessive numbers of books, Borders breached the terms of its agreement with Plaintiffs.

45. Borders breached the agreement with Plaintiffs by returning books ordered directly from Plaintiffs by Borders to Plaintiffs through Baker & Taylor.

46. Borders further breached the agreement with Plaintiffs by returning to Plaintiffs through Baker & Taylor damaged books which it had ordered directly from Plaintiffs.

47. Borders breached the agreement between it and Plaintiffs by using the improper returns referenced in Paragraphs 44, 45, and 46 to offset the outstanding balance owed to Plaintiffs rather than pay for the books it ordered from Plaintiffs.

48. Plaintiffs have suffered harm as a direct and proximate result of the conduct engaged in by Borders and have been damaged in an amount in excess of $1,000,000.00.

## COUNT TWO
## (BREACH OF CONTRACT – BAKER & TAYLOR)

49. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 48 above as if completely rewritten herein.

50. As stated above, Plaintiffs had an agreement with Baker & Taylor whereby Plaintiffs would supply books to Baker & Taylor and Baker & Taylor would compensate Plaintiffs for the same. *See* Exhibit "3."

51. Baker & Taylor's agreement with Plaintiffs sets forth the requirements for the return of books purchased by Baker & Taylor from Plaintiffs.

7

52. Baker & Taylor breached the agreement between it and Plaintiffs by returning books to Plaintiffs which it did not purchase from Plaintiffs.

53. Baker & Taylor further breached the agreement with Plaintiffs by returning to Plaintiffs damaged books which Borders had ordered directly from Plaintiffs.

54. Baker & Taylor breached the agreement between it and Plaintiffs by using the improper returns referenced in Paragraphs 52 and 53 to offset the outstanding balance owed to Plaintiffs rather than pay for the books it ordered from Plaintiffs.

55. Plaintiffs have suffered harm as a direct and proximate result of the conduct engaged in by Baker & Taylor and have been damaged in an amount in excess of $1,000,000.00.

**COUNT THREE**
**(FRAUD)**

56. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 55 above as if completely rewritten herein.

57. Borders falsely represented that Borders would order only a sufficient quantity of Plaintiffs' titles to meet its demands.

58. The representation made by Borders was material to the arrangement between Borders and Plaintiffs.

59. The representation was made by Borders at the inception of the relationship between the parties and each time Borders placed an order with Plaintiffs.

60. Borders knew or should have known that its representation was false.

61. The representation was false because Borders ordered excessive quantities of books from Plaintiffs in order to return the excess to Plaintiffs, thereby generating a credit on Borders' account.

62. Borders intended to mislead Plaintiffs into relying upon its representation.

8

63. Plaintiffs justifiably relied upon the same to their detriment.

64. Borders continued its conduct of excessive ordering and returns when it purchased books from Plaintiffs through Baker & Taylor.

65. Baker & Taylor knew of the representation referred to in Paragraph 57 or reasonably should have known as Borders made the excessive orders and returns through Baker & Taylor just as it did when it purchased books directly from Plaintiffs.

66. Borders also represented to Plaintiffs they would not receive any more returns from Borders.

67. Contrary to its representation, Borders began sending books which it had ordered directly from Plaintiffs to Baker & Taylor for return to Plaintiffs.

68. In some cases, the books referenced in the preceding paragraph included books which Borders was barred from returning to Plaintiffs, such as damaged books.

69. Baker & Taylor falsely represented that all books returned by it to Plaintiffs were books that it purchased directly from Plaintiffs.

70. The representations made by Borders and Baker & Taylor were material to the transaction.

71. Borders and Baker & Taylor knew or should have known the representations were false.

72. The representations by Borders and Baker & Taylor were made with the intent of misleading Plaintiffs into relying upon them.

73. Plaintiffs justifiably relied upon the representations to their detriment.

9

74. Plaintiffs have suffered harm as a direct and proximate result of the conduct engaged in by Borders and Baker & Taylor and have been damaged in an amount in excess of $1,000,000.00.

## COUNT FOUR
## (CIVIL CONSPIRACY)

75. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 74 above as if completely rewritten herein.

76. Upon information and belief, Borders, acting in concert with Baker & Taylor, maliciously conspired to order excessive quantities of books from Plaintiffs and return the same to Plaintiff in order to use the returns to offset the outstanding balance owed to Plaintiffs.

77. Upon information and belief, Baker & Taylor, acting in concert with Borders, maliciously conspired to return books to Plaintiffs even though such books were ordered from Plaintiffs by Borders rather than Baker & Taylor.

78. The conduct of Borders and Baker & Taylor amounts to a breach of contract and/or fraud.

79. Plaintiffs have suffered harm as a direct and proximate result of the conduct engaged in by Borders and Baker & Taylor and have been damaged in an amount in excess of $1,000,000.00.

## COUNT FIVE
## (BREACH OF COVENANT OF GOOD FAITH AND FAIR
## DEALING - BORDERS)

80. Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 79 above as if completely rewritten herein.

81. The conduct by Borders as alleged in Count One constitutes a breach of its implied covenant of good faith and fair dealing in performing the terms of the agreement between it and Plaintiffs.

82. Borders willfully and in bad faith breached its covenants and/or warranties and it other contractual obligations pursuant to the agreement between it and Plaintiffs, as previously described herein.

83. The actions by Borders described previously herein constitute a breach of Borders' implied covenant of good faith and fair dealing in performing the terms of the agreement.

84. As a direct and proximate result of Borders' willful and bad faith breaches of the agreement between it and Plaintiffs, Plaintiffs have and will suffer damages in an amount in excess of $1,000,000.00.

**COUNT SIX**
**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING - BAKER & TAYLOR)**

85. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 84 above as if completely rewritten herein.

86. The conduct by Baker & Taylor as alleged in Count Two constitutes a breach of its implied covenant of good faith and fair dealing in performing the terms of the agreement between it and Plaintiffs.

87. Baker & Taylor willfully and in bad faith breached its covenants and/or warranties and it other contractual obligations pursuant to the agreement between it and Plaintiffs, as previously described herein.

88. The actions by Baker & Taylor described previously herein constitute a breach of Baker & Taylor's implied covenant of good faith and fair dealing in performing the terms of the agreement.

89. As a direct and proximate result of Baker & Taylor's willful and bad faith breaches of the agreement between it and Plaintiffs, Plaintiffs have and will suffer damages in an amount in excess of $1,000,000.00.

### COUNT SEVEN
### (UNJUST ENRICHMENT - BORDERS)

90. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 89 above as if completely rewritten herein.

91. Plaintiffs conferred a benefit upon Borders by providing books to Borders as ordered.

92. Borders improperly returned books to Plaintiffs and used credits for the returned books to offset the outstanding balance owed to Plaintiffs rather than pay Plaintiffs for the books ordered.

93. Borders returned books to Plaintiffs through Baker & Taylor in order to receive a credit from Plaintiffs and Borders received such credit.

94. Borders knew of the benefit conferred upon it by Plaintiffs.

95. It would be unjust for Borders to retain the benefit.

96. As a direct and proximate result of Borders' unjust enrichment, Plaintiffs have been damaged and are entitled to recover damages from Borders in an amount in excess of $1,000,000.00.

## COUNT EIGHT
## (UNJUST ENRICHMENT - BAKER & TAYLOR)

97. Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 96 above as if completely rewritten herein.

98. Plaintiffs conferred a benefit upon Baker & Taylor by providing books to Baker & Taylor as ordered.

99. Baker & Taylor improperly returned books to Plaintiffs and used credits for the returned books to offset the outstanding balance owed to Plaintiffs rather than pay Plaintiffs for the books ordered.

100. Baker & Taylor improperly returned books to Plaintiffs that it did not purchase from Plaintiffs in order to receive a credit from Plaintiffs and Baker & Taylor received such credit.

101. Baker & Taylor knew of the benefit conferred upon it by Plaintiffs.

102. It would be unjust for Baker & Taylor to retain the benefit.

103. As a direct and proximate result of Baker & Taylor's unjust enrichment, Plaintiffs have been damaged and are entitled to recover damages from Baker & Taylor in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs, Jasmine-Jade Enterprises, LLC and Ellora's Cave Publishing, Inc., demand judgment against Defendants, Borders Group, Inc. and Baker & Taylor, Inc.,

pursuant to Counts One, Two, Three, Four, Five, Six, Seven, and Eight above in an amount in excess of $1,000,000.00, punitive damages, attorneys fees, costs, and any such further relief as the Court deems just and equitable.

    Respectfully submitted,

/s John N. Childs
John N. Childs (#0023489)
Darrin R. Toney (#0065590)
**BRENNAN, MANNA & DIAMOND, LLC**
75 East Market Street
Akron, Ohio   44308
330-253-5060
330-253-1977 (fax)
jnchilds@bmdllc.com
drtoney@bmdllc.com

    and

Sergio A. Carano (#0042658)
201 Adena Trace
Copley, Ohio  44321
caranolaw@yahoo.com

Co-Counsel for Plaintiffs, Jasmine Jade Enterprises, LLC and Ellora's Cave Publishing, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of March, 2009, the foregoing was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s John N. Childs
John N. Childs (#0023489)
Darrin R. Toney (#0065590)
**BRENNAN, MANNA & DIAMOND, LLC**
75 East Market Street
Akron, Ohio   44308
330-253-5060
330-253-1977 (fax)
jnchilds@bmdllc.com
drtoney@bmdllc.com

and

Sergio A. Carano (#0042658)
201 Adena Trace
Copley, Ohio  44321
caranolaw@yahoo.com

Co-Counsel for Plaintiffs, Jasmine Jade Enterprises, LLC and Ellora's Cave Publishing, Inc.